# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VAMSIDHAR REDDY** | : |
| **VURIMINDI,** | :       **CIVIL ACTION** |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **FUQUA SCHOOL** | : |
| **of BUSINESS, *et al.,*** | : |
| **Defendants.** | :       **No. 10-234** |

## MEMORANDUM

PRATTER, J.                                                                    AUGUST 19, 2010

## INTRODUCTION

Vamsidhar Reddy Vurimindi has sued Duke University's Fuqua School of Business

("Duke"), as well as twenty-two individuals who were among his fellow students while he was

enrolled in Duke's weekend executive MBA program (the "Student Defendants"). He has also

sued a number of corporations that he alleges employed the Student Defendants (the "Corporate

Defendants"). The overarching theory of Mr. Vurimindi's case is that Defendants have joined in

a conspiracy to destroy his career. He claims that Duke breached an alleged contract, committed

fraud, invaded his privacy, and aided and abetted the Student Defendants in breaching a fiduciary

duty that they allegedly owed to him; that the Student Defendants tortiously interfered with his

relationship with Duke, defamed him, and invaded his privacy; that the Corporate Defendants are

vicariously liable for the Students' alleged defamation; and that all of the Defendants participated

in a conspiracy to deprive him of his civil rights.[1]

---

[1]      Mr. Vurimindi has recently filed several other complaints in U.S. District Court
for the Eastern District of Pennsylvania. In one of these, Mr. Vurimindi claims to have been the
target of a conspiracy that involved his erstwhile employer and several co-workers, *see Vurimindi
v. Wyeth Pharmaceuticals, et al.* (Case No. 10-cv-386). Although Mr. Vurimindi has not sued

Duke has moved to dismiss Mr. Vurimindi's claims against it on a number of grounds,
including, *inter alia*, that Mr. Vurimindi has failed to adequately plead existence of any contract;
fraud with particularity; the existence of any private facts about himself that were obtained by the
school; that Duke is a state actor; and facts sufficient to show that there was a conspiracy.

The Student Defendants have also moved to dismiss each of Mr. Vurimindi's claims
against them. All but one of the Student Defendants has argued that the Court lacks personal
jurisdiction. (The one exception is a resident of Pennsylvania.) Student Defendants also argue,
*inter alia*, that Mr. Vurimindi has failed to satisfy most of the pleading requirements for the tort
of defamation; that all of their alleged defamatory statements are protected speech; and also that
the statute of limitations has expired for many of the alleged statements. They further argue that
Mr. Vurimindi has failed to adequately plead the existence of any contract with which they may
have interfered; the elements of any of the invasion-of-privacy torts; that he was denied any civil
or constitutional right; and facts sufficient to show that there was a conspiracy.

The Corporate Defendants have also moved to dismiss all of Mr. Vurimindi's claims
against them. One of the Corporate Defendants argues that the Court lacks personal jurisdiction.
The remainder do not contest jurisdiction, but argue, *inter alia*, that Mr. Vurimindi has failed to
adequately plead: that the Student Defendants committed defamation; facts which would support

---

Wyeth in this case, he seems to believe that the company plotted with at least one of the Student
Defendants to have Mr. Vurimindi dismissed from Duke. *See* fn. 7, *infra*. In another, he claims
that he was the object of a separate conspiracy that involved agencies and officials of the City of
Philadelphia, including Mayor Michael Nutter, *see Vurimindi v. City of Philadelphia, et al.* (Case
No. 10-cv-88). On August 10, 2010, Judge Ludwig dismissed all of Mr. Vurimindi's claims in
the City of Philadelphia case, noting that the Complaint was "replete with pleading defects," and
concluding, *inter alia*, that Mr. Vurimindi had failed to plead facts to satisfy the legal elements of
a conspiracy claim (Case No. 10-cv-88, Docket No. 37).

a theory of vicarious liability; and facts sufficient to show that there was a conspiracy.

For the reasons that are set forth below, each of the Defendants' motions to dismiss will be granted in its entirety.

## JURISDICTION

The Court has subject-matter jurisdiction over Mr. Vurimindi's claims pursuant to 28 U.S.C. § 1331. Personal jurisdiction is contested by 21 of the 22 Student Defendants, as well as by two of the 20 Corporate Defendants, and this issue will be discussed below.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Vurimindi, who is *pro se*, asserts that he was enrolled in a weekend executive MBA program at Duke from March of 2008 through November of 2009 (Third Amended Complaint, ¶ 52).[2] He alleges while enrolled at Duke, he was unable to enroll in a professional writing course that was only offered during the week; and also that Duke instructors failed to provide him with concrete legal and business advice regarding his real estate ventures in Philadelphia, and instead suggested that he talk to a real estate lawyer (*id.* at ¶¶ 52-55). Mr. Vurimindi also claims that he was "targeted" by a Duke statistics professor who improperly leaked his grades to classmates via teaching assistants, and awarded him a failing mark after "incorrectly" evaluating his answer to an exam question, although this grade was later changed to "low pass" (*id.* at ¶¶ 57-58).

Mr. Vurimindi also received a "low pass" grade in a corporate strategy course, and

---

[2]       At this stage in the litigation, the Court must assume that all of the allegations in the Third Amended Complaint are true, even if doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

subsequently appealed the grade, arguing in an email to a Duke dean that the "corporate strategy professor is very harsh and brutally punishing me for a small mistake and I my small mistake [sic] do not deserve an LP for this course" (*id.* at ¶ 92). Mr. Vurimindi's appeal was considered, but was ultimately denied, as was his subsequent request that he be re-graded based on criteria other than those applied to the rest of the students in the strategy course (*id.* at ¶¶ 95-97).

At the heart of Mr. Vurimindi's complaint is his claim that he was subjected to defamation, "isolation, marginalization, [and] segregation," at the hands of 22 of his Duke classmates, namely Douglas Bashar, Alissandro Castillo, Pratibhash Chattopadhyay, Sudheer Dharanikota, John Dohnal, Jennifer Erickson, Seth Gillespie, David Mitchell, Shana Keating, Rajiv Prasad Kolagani, Amit Khare, Jason Link, Sunil Balasaheb Patil, Pradeep Rajagopal, Moira Ringo, Robert Ross, Kristoffer Singleton, Jason Sundberg, Gregory Valentine, Peter Walton, Eugene White, and Johnny Williams (*id.* at ¶ 98).[3] To support this allegation, he quotes from dozens of emails, and makes reference to many alleged conversations and interactions with the Student Defendants.

One incident is particularly salient. Mr. Vurimindi claims that on January 14, 2009, a dean at Duke asked Mr. Vurimindi whether he had been carrying a gun on campus, which Mr. Vurimindi vehemently denied. He later met with several other Duke administrators regarding the

---

[3] Mr. Vurimindi has incorporated several of the Student Defendants into his career-related conspiracy theories, but he also speculates that his fellow students "rejected" him because his "ethnic background, language, age, and marital relationship is not considered as a norm of this country [sic]" (*id.* at ¶ 98). However, Mr. Vurimindi has not alleged disparate treatment; he has not alleged any actual instances of race-related abuse or discrimination; has not provided his age (making unclear whether he believes that he is younger or older than the alleged norm); and although he states at one point that he is a Hindu who was born in India (*id.* at ¶ 45), references to his ethnic background, native language, and marital status are mostly vague or oblique.

4

same question. Mr. Vurimindi alleges that Duke's inquiries were prompted by a warning from an unknown classmate. Citing emails allegedly sent between members of Mr. Vurimindi's class, Mr. Vurimindi claims that several Student Defendants started a semi-public online discussion of firearms, and also discussed guns with Mr. Vurimindi, "with a goal to start some discussions about the guns and implicate [Mr. Vurimindi] by fabricating and creating traps to [in order to] trap [Mr. Vurimindi] and get [him] expelled from the school" (*id.* at ¶59-63).[4] The Complaint does not make clear what, if anything, Mr. Vurimindi may have said or done in response to these "traps" which could conceivably have prompted Duke to investigate or expel him.

Mr. Vurimindi asserts that in the course of its investigation regarding the gun warning, "[Duke's] administration harassed [him] by constantly monitoring [him], [his] luggage, and [his] computer," and "conducted several unknown searches against [him] at unknown places" (*id.* at ¶¶ 59-60). He claims that Duke "perceived [him] as a threat to the school and justified their action by referring to the 2007 Virginia Tech shooting that left 32 people and the shooter dead" (*id.* at ¶ 62), and also claims that Duke requested that a plainclothes police officer monitor Mr. Vurimindi at an executive MBA class party that was held on October 9, 2009 (*id.* at ¶ 64).[5]

Mr. Vurimindi further claims that he was wrongly subjected to an investigation pursuant to Duke's honor code, after a Student Defendant, Mr. Ross, registered concerns about comments

---

[4]     In these reproduced emails, other students – including the Student Defendants Jason Link, Kristoffer Singleton, Jason Sundberg, Douglas Bashar, Amit Khare, John Dohnal, Peter Walton, and Gregory Valentine – discuss their own firearm preferences and talk about the possibility of taking a trip to a local firing range. Mr. Vurimindi says that these same Defendants approached him to "instigate[ ] [him] to talk about [his] opinion about firearms" (*id.* at ¶¶ 62-63).

[5]     Mr. Vurimindi says that he initially "thought that [the officer was] a Duke's [sic] professor or maybe a distinguished guest and [was] probably starring at me because he liked [my] grey pin stripes suite [sic] that [was] tailored to fit [my] body like a glove" (*id.* at ¶ 64).

that Mr. Vurimindi supposedly made about his use of outside sources in completing assignments. The Duke dean who conducted the investigation explained to Mr. Vurimindi that "once someone raises the possibility of an Honor Code violation, I am required to launch an investigation with two student investigators to assist me," but informed him that "once the evidence was gathered, the three of us unanimously and independently came to the conclusion that there was not sufficient evidence to go forward with a formal case" (*id.* at ¶ 88) (quoting an email).

Mr. Vurimindi also holds Duke partly responsible for other allegedly defamatory comments made by his classmates. He claims that although he "explained the slander and [peer] pressure excreted [sic] by the Students Defendants" to Duke administrators, the university "did not take any steps to mitigate the pressure" (*id.* at ¶ 56). Mr. Vurimindi has also included claims against the companies that he alleges sponsored Student Defendants while they were at Duke, on the ground that each Students Defendant "was an agent and employee of [a Corporate Defendant] and was at all times acting within the purpose and scope of such agency and employment" (*id.* at ¶ 46).[6] In addition, although the Third Amended Complaint is less than limpid on this point, Mr. Vurimindi seems to be under the impression that some Student and Corporate Defendants used "persuasion" to convince unnamed Duke administrators that they should "marginalize, segregate, and isolate the Plaintiff from the rest of [his] class by deploying shadow people all the time" (*id.*

---

[6]     The Corporate Defendants are Accenture, Agilent Technologies, Alcatel-Lucent, Amgen, Bank of America, Booz Allen Hamilton, Dell, Emergent Game Technologies, Ericsson, Ferro Corp., GlaxoSmithKline, HealthPort, M.D. Laser Studio, Seegrid Corp., Shaw Areva MOX Services, Signalscape, Morgan Stanley Smith Barney, SunTrust Bank, Talecris Biotherapeutics, and W.L. Gore & Assoc. As discussed at fn. 28, *infra*, one Corporate Defendant, Shaw Areva MOX Services, contests that it employed any Student Defendants during the relevant period.

6

at ¶ 241-242).[7] The Third Amended Complaint does not provide any basis for this belief, nor does it offer any description of the enigmatic "shadow people," or definition of this term.

Mr. Vurimindi initiated this case by filing a complaint in the Pennsylvania Court of Common Pleas for Philadelphia County on December 18, 2009. Duke removed the case to the U.S. District Court for the Eastern District of Pennsylvania on January 19, 2010. Since the case was removed, Mr. Vurimindi has already filed three amended complaints. The First Amended Complaint was filed on February 22, 2010 (Docket No. 74); the Second was filed on March 10, 2010 (Docket No. 79); and the Third was filed on June 25, 2010 (Docket No. 108).

Count I of the Third Amended Complaint alleges that Duke breached a contract with Mr. Vurimindi (*id.* at ¶¶ 135-145); and Count II alleges that Duke has aided and abetted the Student Defendants in breaching a fiduciary duty that the Students owed to Mr. Vurimindi (*id.* at ¶¶ 146-154). Count III alleges that Duke committed fraud and misrepresentation (*id.* at ¶¶ 155-162); Count IV alleges that Duke invaded Mr. Vurimindi's privacy (*id.* at ¶¶ 163-168); and Count V alleges that Duke conspired to deprive Mr. Vurimindi of his civil rights (*id.* at ¶¶ 169-175).

Count VI of the Third Amended Complaint alleges that the Student Defendants tortiously or wrongfully interfered with a contractual or economic relationship between Mr. Vurimindi and Duke (*id.* at ¶¶ 167-185).[8] Count VII alleges that the Student Defendants committed numerous

---

[7]     During oral argument on the motions to dismiss, Mr. Vurimindi seemed to speculate that certain of the Student Defendants and Duke may have been acting as agents of two of his former employers, GlaxoSmithKline (a defendant in this case) and Wyeth Pharmaceuticals (which he is suing in a separate case). There is also convoluted conjecture along similar lines in the Third Amended Complaint itself. *See, e.g.,* ¶¶ 51, 133, 178-183, 199-200, 227-228.

[8]     The Third Amended Complaint describes Count VI as the first count against the Student Defendants, and Count IX as the first count against the Corporate Defendants. For the sake of simplicity, the Court will number all ten counts ordinally as Counts I through X.

acts of libel or slander (*i.e.*, defamation) (*id.* at ¶¶ 186-210); and Count VIII alleges that these Defendants also invaded Mr. Vurimindi's privacy (*id.* at ¶¶ 211-219).

Count IX alleges that the Corporate Defendants are vicariously liable for the Student Defendants' alleged defamation (*id.* at ¶¶ 220-240); and Count X alleges that the Corporate and Student Defendants conspired to deprive Mr. Vurimindi of his civil rights (*id.* at ¶¶ 241-248).

On March 24, 2010, the Student and Corporate Defendants filed motions to dismiss each of the claims against them in the Second Amended Complaint (Docket Nos. 82-92). Pursuant to an order issued by this Court on July 14, 2010, each of these ten motions shall now apply to the Third Amended Complaint (Docket No. 109). Duke filed a separate motion to dismiss all of the claims against it in the Third Amended Complaint on July 28, 2010 (Docket No. 110).

**LEGAL STANDARDS**

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 127 S. Ct. at 1964-1965 (*quoting Conley*, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... ." *Id.* at 1965 (citations omitted). To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009) (confirming that *Twombly* applies to all civil cases).

As noted above, the Court must accept the complaint's allegations as true. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 127 S. Ct. at 1965 (courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court is under no obligation to accept as true a plaintiff's "unsupported conclusions and unwarranted inferences," *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) *(citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or a plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

The Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts.*, 127 S. Ct. 2499, 2509 (2007); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In considering the Defendants' motions to dismiss in this case, the Court remains cognizant of the fact that a less stringent standard is applied to pleadings drafted by *pro se* litigants when a Rule 12(b)(6) motion is at issue. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasizing that a *pro se* complaint "no matter how inartfully pleaded, can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in

9

support of his claim which would entitle him to relief" -- but finding that "even applying these liberal standards," plaintiff's claims were not cognizable under 18 U.S.C. § 1983).

## DISCUSSION

## I.    *Duke University*

### A.    *Breach of Contract*

The strongest portion of Mr. Vurimindi's breach of contract claim against Duke alleges that the school failed to act in accordance with extremely general language from its mission and diversity statements.[9] This is not a cognizable claim under North Carolina or Pennsylvania law.[10] Vague or aspirational statements cannot form the basis for an enforceable agreement where there is no indication that the parties intended to enter into a bargain,[11] and school publications are not

---

[9]    For example, Mr. Vurimindi cites a section of the Duke mission statement which says, *inter alia*, that: "sustained excellence in terms of management education, research, and the advancement of management practice has been the school's mission ... ." He quotes a section of the diversity statement which says, *inter alia*, that Duke "is committed to building and sustaining an environment conducive to capitalizing on the diversity within [its] community as a source of intellectual, personal, and professional growth and innovation" (Third Amend. Compl. at ¶ 136). Other portions of Mr. Vurimindi's contract claim are essentially variations on his fraud claim, or perhaps vice versa. At any rate, they are not cognizable under either rubric.

[10]    A choice of law analysis is unnecessary in this case. The disposition of the motions to dismiss would be the same under the law of either of the two jurisdictions whose law might conceivably apply – *viz.*, North Carolina, where the campus of Duke University is located, and where most relevant events occurred; and Pennsylvania, where this Court sits and where Mr. Vurimindi alleges that much of the damage to his reputation and career has been suffered.

[11]    A contract requires mutual intent to contract, consideration, and a lack of ambiguity in offer and acceptance. *See, e.g., Elliott v. Duke University,* 66 N.C. App. 590, 596 (1984) ("to be binding [under North Carolina law], the terms of a contract must be definite and certain or capable of being made so"); *Ankerstjerne v. Schlumberger Ltd.*, 2004 U.S. Dist. LEXIS 9927, at *13-14 (E.D. Pa. May 12, 2004) (under Pennsylvania law, "a broad and vague implied promise is not enough" to induce reasonable reliance); *see also Minehan v. United States,* 75

10

generally a valid source of contract. *See, e.g., Giuliani v. Duke University,* 2010 U.S. Dist. LEXIS

32691 (M.D.N.C. 2010) (applying North Carolina law and holding that statements found in the

university's handbooks, manuals, and bulletins are not contracts; and also that a coach's alleged

oral statements to a prospective student were not evidence of a meeting of the minds, did not

establish definite or contract terms, and were "at best, ambiguous as to the circumstances under

which [the prospective student] would acquire any rights"); *Manning v. Temple University,* 2004

U.S. Dist. LEXIS 26129 (E.D. Pa. Dec. 30, 2004) (applying Pennsylvania law and rejecting breach

of contract claim based in part on an allegation that the university failed to follow procedures set

forth in the student handbook).

The fact that Mr. Vurimindi was disappointed with aspects of his experience at Duke

does not, taken alone, entitle him to relief. Attending a college or university does not warrant a

student to file a breach-of-contract suit whenever he or she feels that the experience has not lived

up to broad expectations that he or she may have developed after reading materials promulgated

by the school's administrators, admissions office, or public relations department.[12] This principle

would apply even if Mr. Vurimindi had cast his claim in tort, since the law of neither North

---

Fed. Cl. 249, 260 (2007) (the mission statement of the IRS – "to provide America's taxpayers top
quality service by helping them understand and meet their tax responsibilities and by applying the
tax law with integrity and fairness to all" – is merely "aspirational, and it makes no specific
promise or offer which could be deemed the basis for a contract").

[12]     "Although a cause of action for breach of contract may lie if a student is provided
with no instruction at all, or if the university promises to offer a particular curriculum and fails to
do so, none of these situations is present." *Manning,* 2004 U.S. Dist. LEXIS 26129 at \*35 (*citing
Swartley v. Hoffner,* 734 A.2d 915, 918 (Pa. Super. Ct. 1999); *Cavaliere v. Duff's Bus. Inst.,* 605
A.2d 397, 404 (Pa. Super. Ct. 1992)).

11

Carolina nor Pennsylvania would recognize an educational malpractice action.[13]

Because Mr. Vurimindi has failed to plead facts showing that he was a party to any contract with Duke, his breach of conflict claim against the university will be dismissed.

## B. *Aiding and Abetting Breach of Fiduciary Duty*

For Mr. Vurimindi to show that Duke aided and abetted the Student Defendants in breaching a fiduciary duty that they owed to him, he must show that such a duty existed. A fiduciary relationship arises only under special and limited circumstances. Under the law of both North Carolina and Pennsylvania, the relationship between a graduate student and his classmates is not the kind of relationship giving rise to fiduciary duty. *See, e.g., Ryan v. University of North Carolina Hospitals*, 609 S.E.2d 498 (N.C. App. 2005) (fiduciary duty is generally limited to legal or business settings, "often in which one person entrusts money to another, such as with lawyers, brokers, corporate directors, and corporate promoters") (internal quotations omitted); *Manning*, 2004 U.S. Dist. LEXIS 26129 at *27-29 (noting that "a fiduciary duty arises out of a confidential relationship where the parties do not deal on equal terms, but, on one side there is overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed," and holding that university personnel do not owe a fiduciary duty to students under Pennsylvania law).

Given that Mr. Vurimindi has failed to plead facts showing that the Student Defendants owed him a fiduciary duty – let alone facts showing that such any such duty was breached – he

---

[13] *See Ryan v. University of North Carolina Hospitals*, 494 S.E.2d 789, 791 (N.C. App. 1998) (citing and adopting the reasoning of *Ross v. Creighton University*, 957 F.2d 410 (7th Cir. 1991), wherein the court held that it would not review a university's "generalized promises" about its programs, because doing so would "involve an inquiry into the nuances of educational processes and theories"); *Manning*, 2004 U.S. Dist. LEXIS 26129 at *34-35 ("Pennsylvania refuses to recognize a general cause of action ... where the allegation is simply that the educational institute failed to provide a quality education") (internal quotations omitted).

12

cannot prevail on his aiding and abetting claim against Duke.[14]

## C. *Fraud and Misrepresentation*

Mr. Vurimindi's fraud and misrepresentation claim against Duke is based on the same general theory of educational grievance that undergirds his breach-of-contract claim, albeit with a cursory recitation of several of the elements of common law fraud. He alleges that Duke gave him a "bogus promise" that it would provide an "equal learning opportunity" – a phrase that Mr. Vurimindi repeats several times, but which has no clear meaning. He also says that Duke failed to live up to promises that it would offer an "opportunity to foster new relationships," and that it would provide enough support personnel to "make the Weekend MBA students experience finest [sic] during the term of the course" (Third Amend. Compl. at ¶¶ 156-161).

The Rules of Civil Procedure require that fraud be pled with particularity. FED. R. CIV. P. 9(b). Mr. Vurimindi's fraud claim does not satisfy this requirement. The claim alleges that Duke "informed" Mr. Vurimindi that it would fulfill some nebulous expectations, but it does not identify when or where any of the Duke statements were made, or by whom. Promises of future action – especially vague and unattributed promises such as these – cannot form the basis for a fraud claim. *See, e.g., Braun v. Glade Valley School, Inc.,* 334 S.E.2d 404, 407 (N.C. App. 1954) ("the rule is that fraud cannot be based on an allegation of a promise of future intent"); *Precision*

---

[14]      Even if a fiduciary duty did exist, it is not clear that either North Carolina or Pennsylvania law would actually recognize a tort for aiding and abetting its breach. *See, e.g., Battleground Veterinary Hosp., P.C. v. McGeough,* 2007 NCBC 33, 68 (N.C. Super. 2007) ("it remains an open question whether North Carolina law recognizes a claim for aiding and abetting breach of fiduciary duty"); *In re Jamuna Real Estate LLC,* 365 B.R. 540, 572 (Bankr. E.D. Pa. 2007) ("neither the Pennsylvania Supreme Court nor the Court of Appeals for the Third Circuit has considered whether aiding and abetting a breach of fiduciary duty is a valid cause of action under Pennsylvania law").

13

*Printing Co. v. Unisource Worldwide*, 993 F.Supp. 338, 356 (W.D. Pa. 1998) ("a mere promise to perform future acts, which promise is not kept, does not amount to fraud") (citations omitted).

## D. *Invasion of Privacy*

Mr. Vurimindi's invasion of privacy claim against Duke is based on an allegation that Duke went to exceptional lengths to embarrass him and monitor his behavior. He says that the university released his "financial information" to the public; that it disseminated certain "made-up stories" to the Fuqua student body; and that it "reached out to the small retail business[es] like pub[s], coffee shops, and hair salons in and around" Mr. Vurimindi's home in Philadelphia and "gave publicity to [Mr. Vurimindi's] private married life" (Third Amend. Compl. at ¶ 165).

Some of Mr. Vurimindi's most lurid allegations were only included in the most recent iteration of his Complaint. He has only recently added claims, for example, that Duke "pressed security people as [a] shadow party to follow [him] around"; installed "key logger software" to monitor his computer use; disclosed his bank information, medications, and information about his married life to the student body; and also searched his room (*id.* at ¶ 164).

While Rule 8 of the Federal Rules of Civil Procedure does not require that a complaint set forth detailed factual allegations, it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, a complaint cannot merely present "naked assertion[s]" devoid of "further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557).

In this case, the Third Amended Complaint does not specify what "financial information" was released, what "made-up stories" were disseminated to students, or what private information about Mr. Vurimindi's married life or medications was exposed. At any rate, the North Carolina

Supreme Court has rejected the theory that a plaintiff can recover for invasion of privacy simply by showing that the defendant portrayed him in a false light or published private facts about him. *Hall v. Post*, 323 N.C. 259, 265 (N.C. 1988) (recognition of such claims "would tend to add to the tension already existing between the First Amendment and the law of torts"). Pennsylvania law recognizes these torts, but not on the facts alleged here.[15]

North Carolina and Pennsylvania both recognize an invasion of privacy tort based on intrusion on seclusion, but the Court is concerned by the fact that all of the allegations from the Third Amended Complaint that might support such a claim were only added by Mr. Vurimindi after he had already been placed on notice by Duke that his "private facts" theory was invalid.[16] At oral argument, Mr. Vurimindi was not able to provide a plausible or even coherent answer to direct questions from the Court regarding the ground on which he came to believe that Duke sent its agents to Philadelphia bars, hair salons and coffee shops; or searched his room; or monitored his computer use. Nor was he able to explain why he had not included these grave allegations in earlier versions of the Complaint (which were drafted with considerable attention to detail).[17]

---

[15] Pennsylvania recognizes a publication tort, but requires that private facts were disseminated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Vogel v. W. T. Grant Co.*, 458 Pa. 124, 132 (1974). This requisite has not been pled. A "false light" claim requires an allegation that "highly offensive false statement was publicized by [the defendant] with knowledge or in reckless disregard of the falsity." *Santillo v. Reedel*, 430 Pa. Super. 290, 295-296 (Pa. Super. 1993). Mr. Vurimindi has not alleged that Duke publicized any such statements.

[16] As far as the Court is able to determine, the intrusions are not alleged to have taken place between the filing of the Second and Third Amended Complaints.

[17] At oral argument, the Court asked Mr. Vurimindi repeatedly (1) how he came to believe that Duke was spying on him; and (2) why he had failed to include the spying allegations in earlier versions of his complaint. The closest he came to answering the first question was to speculate that the only way that the Student Defendant Greg Valentine could have obtained and

15

Mr. Vurimindi's intrusion-on-seclusion claim against Duke is appears to be wholly speculative and is implausible on its face, and it will be dismissed. *See Twombly*, 550 U.S. at 570 (dismissal is required where plaintiffs "have not nudged their claims across the line from conceivable to plausible").

### E. *Conspiracy*

Mr. Vurimindi alleges that Duke conspired with the Student Defendants and with professors to "prevent [Mr. Vurimindi] by force, intimidation, and threat from freely mingl[ing] or interact[ing] with [his] classmates" (Third Amend. Compl. at ¶ 171). It is not clear how Duke is actually alleged to have prevented Mr. Vurimindi from mingling with his fellow students, but Mr. Vurimindi does assert that he was monitored by "shadow parties" (*id.* at ¶ 170).[18] Notably, Mr. Vurimindi does not allege any behavior by Duke which might suggest that the university was discriminating against him based on his religion, race, national origin, et cetera.

As a general rule, a conspiracy claim "must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). While the Court is "mindful that direct evidence of a conspiracy is rarely available

---

publicized his medical records – an allegation he presents elsewhere in the Complaint, *see* Third Amend. Compl. ¶ 99(xii) – was if Duke had given Mr. Valentine a room key (Transcript of Oral Argument of July 30, 2010 at 74:2-77:7). He did not answer the second question (*id.*). Further discussion of Mr. Vurimindi's practice of enhancing his factual allegations in response to the emergence of legal barriers to recovery can be found in fn. 20 and 21, *infra*.

[18] Mr. Vurimindi seems to believe that thin factual allegations can be overcome with baroque allegations of suffering. In setting forth his conspiracy claim against Duke he alleges, among other things, that he was "terrified, deprived of the sleep ... and ... gained 17 pounds [of] body weight and [is] now facing the consequences of being overweight" (*id.* at ¶ 171). The Court has no reason to question the truth of these claims, but sees nothing in the Third Amended Complaint that would connect Mr. Vurimindi's suffering to unlawful behavior by Duke.

16

and that the existence of a conspiracy must usually be inferred from the circumstances ..., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.*

Duke cannot be found liable for conspiracy under the Civil Rights Act because Mr. Vurimindi has failed to plead facts which would show that Duke is a state actor. It does not suffice to allege, as Mr. Vurimindi does, that Duke is regulated by the government and receives public funding. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-841 (1982) (a private school, though funded primarily by the state and subject to state regulation, is not a state actor).

Mr. Vurimindi has also failed to state a conspiracy claim under 42 U.S.C. § 1985(3), because although he asserts that he is a Hindu who was born and raised in India (Third Amend. Compl. ¶ 45), he has nowhere alleged facts which might show that Duke acted out of animus against an identifiable class, such as Hindus or Indians. *See Farber v. City of Paterson,* 440 F.3d 131, 135 (3d Cir. 2006) (in order to make out a claim under 42 U.S.C. § 1985(3), a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971)). He has also failed to allege – except in conjectural, conclusory terms – that there was an agreement between Duke and the Student Defendants (or anyone else, for that matter) to violate protected rights. "A general allegation of conspiracy without a statement of facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action." *Black & Yates v. Mahogany Ass'n, Inc.*, 129 F.2d 227, 231 (3d Cir. 1941).

### F.   *Conclusion as to Duke*

For the reasons set forth above, the Court has no doubt that Mr. Vurimindi would be

17

unable to prove any facts in support of his claims against Duke which would entitle him to relief under the laws of either North Carolina or Pennsylvania.

## II. *The Student Defendants*

### A. *Personal Jurisdiction*

Twenty-one of the 22 Student Defendants challenge the Court's personal jurisdiction on the ground that they are not residents of Pennsylvania, they have not consented to jurisdiction, and their actions have not placed them within the reach of Pennsylvania's long-arm statute.

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-resident defendants "to the constitutional limits of the due process clause of the Fourteenth Amendment." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (interpreting 42 PA. CONS. STAT. ANN. § 5322(b)).

Due process requires that (1) the defendant have "minimum contacts" with the forum state, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick*, 238 F.3d at 255 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Remick*, 238 F.3d at 255 (*quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

18

A federal court may exercise personal jurisdiction over a defendant in one of two ways. General personal jurisdiction is appropriate when a cause of action "arises from the defendant's non-forum related activities," and the defendant's contacts with the forum are continuous and systematic. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir. 1995); *see also Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 n.1 (3d Cir. 2002) (noting distinction); *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984)). By contrast, specific personal jurisdiction can be invoked when a cause of action arises from the defendant's forum-related activities. *Vetrotex*, 75 F.3d at 151.

In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996), *cert. denied*, 519 U.S. 1028 (1996). The plaintiff must establish those contacts with reasonable particularity. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1996). Once the plaintiff makes out a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that some other considerations exist which would render exercise of personal jurisdiction unreasonable. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).

The Court lacks general personal jurisdiction over the non-resident Student Defendants because Mr. Vurimindi has failed to plead facts which would show that these Defendants have

19

continuous and systematic contacts with Pennsylvania.[19] The Court lacks specific personal jurisdiction over the non-resident Student Defendants because there is no evidence in the Third Amended Complaint that these Defendants "purposefully directed [their] activities at the forum." See *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) *(quoting Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

In *Marten v. Godwin*, 499 F.3d 290, 298-299 (3d Cir. 2007), the U.S. Court of Appeals for the Third Circuit considered a motion to dismiss claims brought by a Pennsylvania resident against the University of Kansas and several of its employees, and rejected plaintiff's argument that defendants' e-mails and telephone calls to plaintiff in Pennsylvania were sufficient to sustain jurisdiction. The Court noted that "the state of a plaintiff's residence does not, on its own, create jurisdiction over nonresident defendants," and emphasized that the forum state must actually be "the focus of the activities of the defendant out of which the suit arises." *Id.* at 298.

Almost all of the allegedly unlawful actions described in the Third Amended Complaint took place in North Carolina, and there is no evidence that the Student Defendants engaged in behavior that was intentionally targeted at and focused on Pennsylvania.[20] The fact that some

---

[19]    Courts will exercise general jurisdiction over individual defendants if they (1) were present in the state at the time process is served; (2) were domiciled in the state at the time of service of process; or (3) consent. 42 Pa. C.S.A. § 5301(a). The Third Amended Complaint does not provide any reason to believe that these conditions are satisfied here.

[20]    In his Third Amended Complaint, Mr. Vurimindi has added allegations relating to the impact of the Student Defendants' alleged defamation in Pennsylvania: "The intensity of the slander is very high where Plaintiff's presence is more frequent to the neighborhood shops, like Starbuck [sic] coffee shop, Café Ole coffee shop, Moko Hair Salon, Charlie's Pub, Race Street Pub, etc." (Third Amend. Compl. at ¶ 191). However, the fact that Mr. Vurimindi might have been harmed in Pennsylvania would not establish personal jurisdiction. *See Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) (dismissing a defamation claim for lack of jurisdiction even though the plaintiff might conceivably have felt the bulk of the harm in the forum state); *see also IMO*

20

Student Defendants may have made telephone calls to or sent emails that were read in this state does not give this Court personal jurisdiction, as there is no evidence that Student Defendants availed themselves of the privilege of conducting activities in Pennsylvania. *See Toys 'R' Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 455 (3d Cir. 2003) (discussing purposeful availment). To the extent that Mr. Vurimindi does allege wrongful behavior in or directed at Pennsylvania, his Third Amended Complaint is either lacking information sufficient to establish jurisdiction (*e.g.*, baldly asserting that he was "slandered" in Pennsylvania without actually alleging defamatory statements), or is controverted by reliable evidence of the kind that the Court can consider in ruling on a Rule 12(b)(2) motion.[21]

Independent of these considerations, the Court must consider whether it would be fair to exercise specific jurisdiction over the non-resident Student Defendants. The personal jurisdiction requirement exists to prevent a defendant from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. The Supreme Court has identified factors that courts should consider in determining if traditional notions of fair play support the exercise of personal jurisdiction, including (1) the burden on the defendant;

---

*Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (applying the "special effects" test for intentional torts, as set forth in *Calder v. Jones*, 465 U.S. 783, 788-90 (1984), and noting that specific jurisdiction requires that "the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity").

[21]     In a letter to the Court submitted after oral argument on the motions to dismiss, Mr. Vurimindi added an allegation that Student Defendant Jason Link "several times visited the Hoopskirt Factory Lofts building [in Philadelphia] where Plaintiff' [sic] residence is located in the pretext that he wanted to buy a condo and slander[ed] the Plaintiff" (Docket No. 111). Mr. Link has submitted an affidavit declaring that he only ever visited the Hoopskirt Factory Lofts seven months before he met Mr. Vurimindi, and has never discussed Mr. Vurimindi with the building's residents, or with developers or real estate agents (Link Affidavit of Aug. 6, 2010).

21

(2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477. Weighing these factors – and with a particular emphasis on the attenuated relationship between the non-resident Student Defendants and the Commonwealth of Pennsylvania – the Court finds that traditional notions of fair play and substantial justice do not support an exercise of personal jurisdiction in this case.

For these reasons, all of Mr. Vurimindi's claims against each of the Student Defendants with the exception of Mr. Sundberg will be dismissed due to lack of personal jurisdiction. For reasons identified below, the Court will also dismiss all of the claims against Mr. Sundberg.

## B. *Tortious Interference*

Mr. Vurimindi claims that the Student Defendants tortiously or wrongfully interfered with Mr. Vurimindi's contractual relationship with Duke. Given that Mr. Vurimindi has failed to allege facts showing that a contract existed, this claim will be dismissed as to Mr. Sundberg.[22]

## C. *Defamation*

Mr. Vurimindi's defamation claim against the Student Defendants identifies many allegedly defamatory statements.[23] Given that the Court lacks personal jurisdiction over all of the

---

[22] Similarly, no facts are alleged which would support Mr. Vurimindi's offhanded and vague suggestion that he had some kind of "relationship" with Wyeth Pharmaceuticals and with the City of Philadelphia with which the Student Defendants also interfered (Third Amend. Compl. ¶ 180). The Court cannot base its ruling here on factual allegations that Mr. Vurimindi may have presented in his other cases.

[23] Mr. Vurimindi principally employs the terms "slander" and "libel," which are merely two species of defamation.

Student Defendants other than Mr. Sundberg, it will direct its attention principally to statements that are attributed to him.

All of Mr. Sundberg's alleged statements are merely opinions. This includes Mr. Sundberg's alleged statements that (1) a pimp outfit would be appropriate for Mr. Vurimindi in real life (said at a party with a "pimps and hoes" theme); (2) Mr. Vurimindi needs "pussies" (*i.e.*, would benefit from having sex); (3) Mr. Vurimindi is not a capable person; and that (4) "he [Mr. Sundberg] will win, because [Mr. Vurimindi] is not working for any corporation." Opinions are not defamatory because they lack a "provably false factual connotation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). The Court cannot evaluate whether or not Mr. Vurimindi is "capable" (a term with no fixed legal definition), let alone delve into the other thorny factual questions that an evaluation of Mr. Sundberg's statements might raise.[24]

In addition, Mr. Sundberg's "pimp" comment is outside the statute of limitations. The statute of limitations for defamation in both Pennsylvania and North Carolina is one year. *See* 42 Pa. C.S.A § 5523(1); N.C. Gen. Stat. §1-54(3). Mr. Vurimindi filed his complaint on December 17, 2009, and he alleges that Mr. Sundberg made the "pimp" comment in October of 2008 (Third Amend. Compl. at ¶ 99(x)).

Mr. Vurimindi's other defamation allegations against Mr. Sundberg are so lacking in specificity that they are not cognizable. Mr. Vurimindi claims that Mr. Sundberg "slander[ed]

---

[24]     If Mr. Sundberg's statements were to be characterized as epithets or insults rather than opinions, they would be likewise non-actionable. *Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc.*, 489 A.2d 1364, 1369 (Pa. Super. Ct. 1985) (noting that "[c]ommunications which may annoy or embarrass a person are not sufficient as a matter of law to create an action in defamation"); *Flake v. Greensboro News Co.*, 195 S.E. 55, 61 (N.C. 1938) (finding that the law "does not undertake to compensate for mere hurt and embarrassment alone").

23

the Plaintiff to the Wyeth Pharmaceutical employees, City of Philadelphia employees and in and around the Plaintiff residence" (Third Amend. Compl. ¶ 199-200), but he does not say what Mr. Sundberg may have actually said on these occasions. A defamation claim must, at a minimum, describe a defamatory statement.

For these reasons – and also because the Court is loath to insert itself into the regulation of adult speech in academia, *see, e.g., Shelton v. Tucker*, 364 U.S. 479, 487 (1960) ("the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools") – Mr. Vurimindi's defamation claim against Mr. Sundberg will be dismissed.

The Court need not consider the allegedly defamatory statements that Mr. Vurimindi attributes to the Student Defendants other than Mr. Sundberg, but will merely note that many of these alleged statements are non-actionable opinions or epithets, or are simply not defamatory.[25] In addition, some statements are alleged to have been made outside the statute of limitations.[26]

## D. *Invasion of Privacy*

Mr. Vurimindi has not alleged any behavior by Mr. Sundberg which might conceivably be characterized as an intrusion upon his seclusion. Nor has he specified any private information

---

[25] For example, various Student Defendants are alleged to have opined – or in some instances to have merely implied – that Mr. Vurimindi was "acting up," that he was not pulling his weight on a group project, that he was "not even a graphic artist," that he "can't even run a small restaurant," and that he is "trash," a "low self esteemed person," a "3rd class student," a "B student," a "motherfucker," and so on (Third Amend. Compl. ¶ 99). These kinds of statements, no matter how hurtful, do not satisfy the legal requirements for a successful defamation claim.

[26] This includes Jennifer Erickson's statement that Mr. Vurimindi is a "criminal"; John Dohnal and Seth Gillespie's statements that Mr. Vurimindi is "lying" and that his "lips are trembling"; David Mitchell's statement that Mr. Vurimindi is a "cheater" who should review a book about "How to Lie Without Getting Caught"; and Amit Khare's statement about "killing" a message board thread. These statements are alleged to have been made before Dec. 17, 2008.

about himself that Mr. Sundberg may have disseminated to the general public.

## E. *Conspiracy*

Mr. Vurimindi's conspiracy claim against Mr. Sundberg and the other Student
Defendants suffers from the same deficiencies as his conspiracy claim against Duke. He has
failed adduce evidence of the most basic element of a conspiracy claim, an agreement.

## D. *Conclusion as to the Student Defendants*

For the reasons set forth above, the Court lacks personal jurisdiction over the majority of
the Student Defendants, and has no doubt that Mr. Vurimindi would be unable to prove any facts
in support of his claims against Jason Sundberg which would entitle him to relief under the laws
of either North Carolina or Pennsylvania. For these reasons, Mr. Vurimindi's claims against the
Student Defendants will be dismissed.

## III. *The Corporate Defendants*

### A. *Personal Jurisdiction*

The Court lacks personal jurisdiction over two of the 20 Corporate Defendants, M.D.
Laser Studio and Emergent Game Technologies. These Defendants have filed declarations or
affidavits showing that the Court lacks general jurisdiction,[27] and there is no specific jurisdiction

---

[27]     General jurisdiction exists over a corporation that (1) is incorporated in
Pennsylvania or qualifies as a foreign corporation under the laws of Pennsylvania; (2) consents to
jurisdiction; or (3) engages in continuous and systematic business activities in Pennsylvania. 42
Pa. C.S. § 5301(a)(2). Neither M.D. Laser Studio nor Emergent is incorporated in Pennsylvania
or is licensed as a foreign corporation; neither has consented to jurisdiction; and neither engages
in continuous and systematic business activities in Pennsylvania (*see* Decl. of M.D. Laser Studio,
Ex. B to M.D. Laser Studio's Motion to Dismiss; Affidavit of Scott Johnson, Ex. A to Emergent
Game Technologies' Motion to Dismiss). Neither of the companies has offices in Pennsylvania,
does business in Pennsylvania, or solicits business in Pennsylvania (*id.*).

25

for the same reasons set forth in the Court's analysis of its personal jurisdiction over the Student Defendants — *viz.*, no facts are alleged which would show that these Defendants engaged in any forum-directed activities, and substantial justice does not favor an exercise of jurisdiction.

## B. *Vicarious Liability*

Even leaving aside the deficiencies in Mr. Vurimindi's underlying defamation claims, the Third Amended Complaint does not allege facts showing that the Student Defendants were acting in the course of their employment when they made any of the allegedly defamatory statements. An employee's conduct is considered to be within the scope of his employment only if (a) it is of the kind that he has been employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve his employer. *Iandiorio v. Kriss & Senko Enterprises, Inc.*, 517 A.2d 530, 533 (Pa. 1986).

The Third Amended Complaint provides no basis to believe that any of these three elements might be satisfied in this case. In the absence of facts giving rise to the inference that the Student Defendants could have been acting in the course of their employment, the fact that Corporate Defendants are alleged to have paid for most of the Student Defendants to attend Duke is irrelevant.[28] Mr. Vurimindi's confusing allegations that some of the Student Defendants may have defamed Mr. Vurimindi in their capacity as agents of Corporate Defendants (*see, e.g.,* Third Amend. Compl. at ¶ 199-200, 227-229, 232) are purely speculative and amount to nothing more

---

[28]    Shaw Areva MOX Services denies that it employed Student Defendant Eugene White from March 2008 to November 2009, as is alleged in the Third Amended Complaint (¶ 43, 199). Shaw has submitted an affidavit from Gregory Randall, general counsel for several entities within Shaw, and Mr. Randall asserts that he has reviewed Shaw's employment records and has found no record that Shaw employed Mr. White during the time alleged – or, for that matter, that Shaw employs him now (Randall Affidavit). Two of the Student Defendants, Shana Keating and Pradeep Rajagopal, are not alleged to have been in the employ of any Corporate Defendants.

26

than a conspiracy theory in the pejorative sense.

### C. *Conspiracy*

Mr. Vurimindi's conspiracy claim against the Corporate Defendants suffers from the same deficiencies as his conspiracy claims against Duke and the Student Defendants. The basis of this claim is a wholly unsupported allegation that the Corporate Defendants "persuaded" Duke to "monitor" and "trap" Mr. Vurimindi due to his "national origin, color and religion" (Third Amend. Compl. at ¶ 241). This is apparently pure speculation, since no facts are adduced which might show either an agreement or discriminatory animus.

### D. *Conclusion as to the Corporate Defendants*

The Court has no doubt that Mr. Vurimindi would be unable to prove facts in support of his claims against the Corporate Defendants which would entitle him to relief under the laws of North Carolina or under the laws of Pennsylvania. Therefore, each of Mr. Vurimindi's claims against the Corporate Defendants will be dismissed.

## IV. *Prejudice*

Although this Court shall "freely give leave to amend where justice so requires," FED. R. CIV. P. 15(A), the Supreme Court has identified circumstances under which it may be appropriate for such leave to be denied. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). Among the reasons that a claim might be dismissed with prejudice are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.; see also Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 166 at fn.

27

28 (3d Cir. 2004) (district court properly dismissed claims with prejudice where the district court found that further amendment would be futile); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (district court properly dismissed claims without prejudice where the district court found that further amendment would result in undue prejudice to defendants).

The Court has determined that each of Mr. Vurimindi's claims against Duke, Student Defendant Jason Sundberg, and 18 of the 20 Corporate Defendants should be dismissed with prejudice. Mr. Vurimindi has already amended his Complaint several times. The Court has not previously evaluated Mr. Vurimindi's claims in the context of a motion to dismiss, but all of the Defendants moved to dismiss Mr. Vurimindi's Second Amended Complaint before he filed his Third, and their motions ably and plainly described the Complaint's numerous and substantial legal deficiencies. Indeed, it is apparent that Mr. Vurimindi comprehended the weaknesses that the Defendants identified, since his Third Amended Complaint contains new factual allegations that were included – and perhaps designed – to surmount hurdles presented by the motions to dismiss the Second.

Given that Mr. Vurimindi has repeatedly failed to present any cognizable claim against Duke, Mr. Sundberg, or the Corporate Defendants, and the irredeemability of the claims that he presents in his Third Amended Complaint, it would be futile to allow him another opportunity to amend.[29] In addition, further amendments would unduly prejudice Duke, Mr. Sundberg, and the Corporate Defendants by forcing them to continue to respond to legal theories that are without

---

[29] "Futility is governed by the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (*citing In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997)). In other words, amendment would be futile if "the complaint, as amended, would [still] fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

basis, and which indeed suffer from several layers of deficiency. This deficiency is not a product of Mr. Vurimindi's lack of legal training, but inheres in the claims themselves. To give but one notable example, the *respondeat superior* theory on which Mr. Vurimindi has sued the Corporate Defendants is so plainly flawed that the Court is left with the impression that these Defendants may have been named in the Complaint for their deep pockets alone.

This Court is able to dismiss all of the claims against Duke, Mr. Sundberg, and each of the Corporate Defendants except for M.D. Laser Studio and Emergent Game Technologies with prejudice because the Court has personal jurisdiction over each of these Defendants. But the Court lacks personal jurisdiction over the other Student Defendants and the two aforementioned Corporate Defendants, and Mr. Vurimindi's claims against these Defendants must be dismissed without prejudice.[30] Mr. Vurimindi is nevertheless strongly encouraged to reflect upon the wisdom of proceeding with any of his claims against the Student Defendants, M.D. Laser Studio, and Emergent Game Technologies in any other jurisdiction. For reasons noted above, many if not all of the claims would be extremely unlikely to survive a motion to dismiss.[31]

---

[30]     Where a district court lacks jurisdiction over a defendant, its "disposition of such a case will ... be without prejudice." *Ray v. Eyster*, 132 F.3d 152, 155 (3d Cir. 1997) (citations omitted); *see also, e.g., Sewell v. Merrill Lynch*, 94 F.3d 1514, 1518 (11th Cir. 1996) ("ordinarily a judgment dismissing an action or otherwise denying relief for want of jurisdiction ... does not preclude a subsequent action in a court of competent jurisdiction on the merits of the cause of action originally involved") (internal quotations omitted).

[31]     This Court's analysis of Mr. Vurimindi's claims against the Corporate Defendants other than M.D. Laser Studio and Emergent is as applicable to these two Corporate Defendants as to each of the others. Likewise, the Court's analysis of Mr. Vurimindi's tortious interference and conspiracy claims is as applicable to the other Student Defendants as it is to Mr. Sundberg. Mr. Vurimindi's defamation claims are specific to individual Defendants (as are, to some degree, his invasion of privacy claims); however, as noted above, many of alleged statements are merely opinions or insults, or are otherwise incapable of defamatory meaning. Several fall outside the statute of limitations. Mr. Vurimindi has also failed to allege that many of the alleged statements

29

In a letter to the Court, sent after oral argument was held on the motions to dismiss, Mr. Vurimindi suggests that "due to lack of formal legal training, I could not ... present applicable law and/or legal theory as persuasively as [counsel for] the defendants." Be this as it may, the Court's opinion as to these motions is not a reflection on Mr. Vurimindi's skills in court. This Court holds pleadings drafted by *pro se* plaintiffs to a less stringent standard than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520-521 (1972), and applies the same logic in evaluating arguments presented by *pro se* plaintiffs in the courtroom.

The problem here is with the substance of the claims alleged. Mr. Vurimindi has demonstrated admirable industriousness in prosecuting this action, but discretion is often the better part of advocacy. One of the principle advantages of being represented by an attorney is that she or he can often assist a client in determining when a lawsuit may be profitable exercise, and when it will likely end in frustration. Not every injury, no matter how deeply felt, entitles a plaintiff to legal relief, and no amount of energy, legal acumen, or indignation can give rise to a viable claim where the facts alleged in the complaint do not, as a matter of law, establish a basis for any of the causes of action that are asserted.

---

were ever published to a third party, and also to adequately plead special damages. Finally, it is worth noting that the statements were made in a university setting.

**CONCLUSION**

Counts I-V against Duke are dismissed with prejudice. Counts VI-VIII against the Student Defendants are dismissed without prejudice except as to Mr. Sundberg, as to whom they are dismissed with prejudice. Counts IX-X against the Corporate Defendants are dismissed with prejudice except as to M.D. Laser Studio and Emergent Game Technologies, as to whom they are dismissed without prejudice. An order to this effect follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

31