# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VAMSIDHAR REDDY VURIMINDI, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FUQUA SCHOOL of BUSINESS, *et al.*, | : | |
|     Defendants. | : | No. 10-234 |

# MEMORANDUM

PRATTER, J.                                                                                                                   SEPTEMBER 13, 2010

**INTRODUCTION**

Vamsidhar Reddy Vurimindi sued Duke University's Fuqua School of Business ("Duke"), as well as 22 individuals who were among his fellow students while he was enrolled in Duke's weekend executive MBA program (the "Student Defendants"). He also sued a number of corporations that allegedly employed the Student Defendants (the "Corporate Defendants"). The overarching theory of Mr. Vurimindi's case was that the Defendants have joined in a conspired to destroy his career.[1] On August 25, 2010, the Court granted motions to dismiss filed by all of the Defendants, and held that (1) the Court lacks personal jurisdiction over two of the 20 Corporate Defendants and one of the 22 Student Defendants; and (2) that Mr. Vurimindi has failed to state any claim against any of the remaining Defendants, including Duke.

Mr. Vurimindi promptly filed a motion for reconsideration of the Court's decision to dismiss his claims (Docket No. 116). For the reasons set forth below, this motion will be denied.

---

[1] The facts of this case and Mr. Vurimindi's precise allegations are described at length in the Court's Memorandum and Order of August 25, 2010 (Docket No. 115), *Vamsidhar Reddy Vurimindi v. Fuqua Sch. of Bus.*, 2010 U.S. Dist. LEXIS 88094 (E.D. Pa., Aug. 25, 2010).
.

LEGAL STANDARDS

To succeed on a motion for reconsideration, the moving party must demonstrate either (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a manifest injustice stemming from a clear error of law or fact. *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

Where the basis of the motion for reconsideration is to correct a manifest injustice, the moving party must persuade the court that not only was the prior decision wrong, "but that it was clearly wrong and that adherence to the decision would create a manifest injustice." *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998). In addition, "motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *In re Loewen Group*, 2006 U.S. Dist. LEXIS 200, *4-*5 (E.D.Pa. Jan. 5, 2006), *quoting Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D.Pa. 1992).

DISCUSSION

In its Order granting Defendants' Motions to Dismiss, the Court observed in a footnote that Mr. Vurimindi seemed to believe that he was the object of a broader conspiracy orchestrated by two of his former employers: GlaxoSmithKline ("GSK"), which is a Corporate Defendant in this case; and Wyeth Pharmaceuticals ("Wyeth"), which is a defendant in one of Mr. Vurimindi's

other cases,² but is not a party here. *Vurimindi v. Fuqua*, 2010 U.S. Dist. LEXIS 88094 at fn. 7.

Mr. Vurimindi seems to have taken this passing remark as an invitation to provide a lengthy and byzantine recitation of his experiences at GSK and at Wyeth. His motion, which runs more than 160 pages, introduces a new cast of characters who are not parties to this matter, and accuses them of engaging in the same kinds of behavior that he has attributed to the Student Defendants: ridiculing and slighting him, spreading rumors, ignoring his contributions, lying, monitoring his computer, conspiring against him, and so on. This information, even if true, is not relevant to the disposition of Defendants' motions to dismiss in this case.³

Although the rest of the motion is devoted principally to reiterating arguments already presented in his Third Amended Complaint, Mr. Vurimindi has also elaborated upon most of his claims, and has included some new details and additional citations to case law. However, none of Mr. Vurimindi's new factual claims or legal arguments resolves any of the deficiencies already identified by the Court.⁴ In addition, Mr. Vurimindi seems to have misunderstood the standard for reconsideration, which does not allow the Court to reevaluate its previous decision *de novo* but rather provides a remedy in those rare cases where the law has changed, new evidence has become available, or the Court's original order was wrong and unjust. Given that Mr. Vurimindi has not identified any changes in law or newly-available evidence (as opposed to evidence newly supplied), the Court will regard his motion as one claiming manifest injustice, and the Court has

---

² *Vurimindi v. Wyeth Pharmaceuticals, et al.* (E.D.Pa., Case No. 10-386).

³ Much of this new information appears to have been taken from Mr. Vurimindi's complaint in *Wyeth*, which is pending before U.S. District Court Judge Edmund Ludwig.

⁴ The absence of any facts to support the vicarious liability theory which is the basis for Mr. Vurimindi's claims against the Corporate Defendants continues to be a fundamental flaw.

concluded that no such injustice is present.

The Court's original order praised Mr. Vurmindi for his industriousness, which is again in evidence here, but suggested that he would benefit from the advice of an attorney, who could assist him in determining whether he might be pushing against a legal brick wall. In our judicial system, judges are bound to respect the text of applicable statutes and also common law rules or precedents established by other courts.[5] Because courts do not have wholesale discretion, an experienced professional can often predict the reception that will greet even a novel legal theory or claim.[6] In fields that have been heavily litigated, this process of prediction sometimes allows for the law to be stated as a matter of fact. To give but one example taken from Mr. Vurimindi's motion, this Court would not be permitted to hold that statements of opinion must be proceeded by the words "in my opinion" to be exempted from the category of actionable defamation.[7]

---

[5] *See, e.g.*, *S. Pac. Co. v. Jensen*, 244 U.S. 205, 221 (Holmes, J., dissenting) ("a common-law judge could not say I think the doctrine of consideration a bit of historical nonsense and shall not enforce it in my court"); Antonin Scalia, "The Rule of Law and the Law of Rules," 56 U. Chic. L. Rev. 1175 (1989) (observing that in our judicial system, "judges are bound, not only by the text of code or Constitution, but also by the prior decisions of superior courts").

[6] Indeed, Justice Holmes described the law itself as "systemized prediction," and argued that the principal object of its study is "the prediction of the incidence of the public force through the instrumentality of the courts." Oliver Wendell Holmes, Jr., "The Path of the Law," 10 Harv. L. Rev. 457 (1897).

[7] Mr. Vurimindi argues that the failure of the Student Defendants to qualify their allegedly defamatory statements in this manner defeats their motions to dismiss his defamation claims. *See* Motion for Reconsideration at 91. The Supreme Court has held that the words "in my opinion" are not a talisman with the power to shield defendants for liability from defamation, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990), and logic dictates that the converse is also true, and that the presence of these words is not the sole means by which opinion statements may be distinguished from statements of fact. The relevant question is not formal but functional: whether a given statement has a "provably false factual connotation." *Id.* at 20.
Jason Sundberg, the only Student Defendant over whom the Court has personal jurisdiction, is accused of saying that a pimp costume would be "suitable" for Mr. Vurimindi;

Mr. Vurimindi acknowledges, with commendable self-awareness, that "due to [the] emotional nature of [this] situation, Plaintiff's responses [to Defendants' motions] were less than coherent and equally emotional" (Motion for Reconsideration at 2). This thoughtful concession points to another advantage of having professional legal representation. An old proverb cautions that "one who is his own lawyer has a fool for a client."[8] This maxim's resonance stems from the fact that litigants themselves – whether or not possessed with the benefit of legal training – often have too great an emotional investment in the outcome of their case to know when to cut their losses. Mr. Vurimindi is certainly no fool, but he would nevertheless benefit from a frank discussion with an attorney – or even a friend or mentor – who has no dog in his fight.[9]

The Court would like to emphasize that its disposition of the Defendants' motions to dismiss is based on the law, and is not a judgment of the authenticity of Mr. Vurimindi's feelings about whatever may have happened during his time at Duke. However, as the Court has already observed, "not every injury, no matter how deeply felt, entitles a plaintiff to legal relief, and no amount of energy, legal acumen, or indignation can give rise to a viable claim where the facts alleged in the complaint do not, as a matter of law, establish a basis for any of the causes of action that are asserted." *Vurimindi*, 2010 U.S. Dist. LEXIS 88094 at *55.

Finally, and not unexpectedly, Mr. Vurimindi requests leave to amend. The Court has

---

that Mr. Vurimindi is "in need of 'pussies'"; that Mr. Vurimindi is not "capable"; and that he, Mr. Sundberg, would somehow "win" out over Mr. Vurimindi (Third Amended Complaint at ¶ 99(x)). These opinions may be rude or offensive or even – by whatever measure – incorrect, but none is provably false. *See Vurimindi*, 2010 U.S. Dist. LEXIS 88094 at *42.

[8]  *Faretta v. Cal.*, 422 U.S. 806, 852 (1975).

[9]  Judge Ludwig made a similar observation at the conclusion of his opinion in *Vurimindi v. Philadelphia*, 2010 U.S. Dist. LEXIS 82762 at *12 (E.D.Pa., Aug. 10, 2010).

already addressed its reasons for denying some of his claims with prejudice, *see id.* at *49-56, and Mr. Vurimindi's motion for reconsideration – which in both length and form bears more resemblance to an amended complaint than to a motion – gives further weight to the Court's conclusion that there is no doubt that Mr. Vurimindi would not be able to prove facts in support of those claims. *See id.* at *49-51 (setting forth standard for denying plaintiff leave to amend). There is no perceptible basis on which to rest yet another pleading effort by this Plaintiff.

**CONCLUSION**

For the reasons set forth above, Mr. Vurimindi's motion for reconsideration will be denied. An order to this effect follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE